be seated. The clerk called the next case, please. Um, Mr McCoy. Thank you, Your Honor. This is the Board of Counsel. I am Robert McCoy, and I'm representing Sheriff John Thompson and the County Bureau in this matter, and this is a petition for direct administrative review of a order of the State Labor Relations Board, and the case below had two counts, but only one is on appeal. The State Labor Relations Board ruled in the sheriff's and county's favor on count two, and there was no exception filed, so we're only on the count one, which was a charge that Sheriff Thompson and the county's, I guess, joint employee engaged in an anti-union animus when charges were brought by the sheriff before the merit commission to discipline Deputy Don Dove, and there's a lot of issues in this brief. I know it's a thick brief with a lot of issues presented, but the easiest, simplest grounds for reversal is the Labor Board's decision was just wrong on the facts. There's more interesting issues, but this is a nice, simple issue. The charge, unfair labor practice, to establish it there has to be a prima facie case, and I argue that there was a prima facie case of anti-union animus here. I'm going to leave you to look at the brief and the record for that issue. But then, once you have a prima facie case of an unfair labor practice of an anti-union animus, then it goes to the employer to show a legitimate reason for these actions, for taking adverse action against an employee, and then if there is a legitimate reason, there is a dual motive analysis to see whether the employer would have taken those actions still, notwithstanding the anti-union animus, a but-for kind of test. And that is where the order most clearly falls through. The ALJ made some findings that the sheriff here had legitimate reasons to go to before the merit commission, when he brought five charges against Deputy Don Dove before the merit commission, but the ALJ, in her opinion, which was adopted completely by the board, adopted by reference, was that two of those charges lacked legitimacy. And one was that the charge that Dove engaged in political activity while on duty, and the second was that the one involving Deputy Dove's involvement in the accessing of the Leeds database, in an unauthorized access to the Leeds database. And the ALJ found that the first, the political activity charge wasn't legitimate because it was just expressing private political beliefs between two coworkers. But the record was, and the whole merit commission record was entered into the record into the labor board proceeding hearings, was that Dove went to a business place, told a person present, at least two people present actually there, vote for Joe Bertetto. She kept on going back there, did it more than once. She met during business hours while in uniform each of these times, and met with Bertetto about political strategy. She even said, I'm not going to write any tickets to undermine the sheriff during his re-election campaign. And this happened over the course of an hour, one of these meetings, with the business of Robert Constantine. So it was not coworkers. So the ALJ just had the facts wrong there. There's no two ways around it. And if that doesn't shock the conscience, I don't know what would. A peace officer saying, I'm not going to write tickets to undermine my employer. I'm going to do it while in uniform, and I'm going to say it in the presence of private citizens. So the ALJ was just wrong with that. The second charge was that the ALJ found lack of legitimacy, and the labor board agreed, was the one about accessing Leeds' database. What happened was, this was all before the American Commission testimony, which was entered into the record. Don Dove, Deputy Dove, goes to a coworker, Amy Reuter, and says, I want you to pull up the picture of what we call Jane Doe, and access and print that picture. And Amy Reuter says, I don't know how to do that. And Deputy Dove walks her through the process, does not tell her it's not for an unauthorized reason, and takes this whole copy of that picture that's printed out. Next day, it's put it on the bulletin board. And the ALJ says, well, this is not a legitimate reason to impose discipline, because Deputy Dove didn't personally go through the process of accessing the Leeds' database, and we don't know whether she posted that picture on the bulletin board. Well, it was uncontested that Amy Reuter didn't know how to do this herself. Dove walked her through the steps, and Dove took the only copy of the photo, so she gave it to somebody, at least, who posted it on the bulletin board. And that's what the actual charges were against Dove before the American Commission. Not that she personally accessed the Leeds' database, but that she told someone else to do it, that she was the instigator, she was the mastermind. Without her action, this would not have happened. And it was uncontested that this was a violation of state law, and it was uncontested that that could impact the certification of the Sheriff's Department and its ability to access the Leeds' database in the future. It was uncontested that Dove did this basically to mock Jane Doe. Jane Doe was allegedly in a relationship with a co-employee, and Dove said, this was a step down from this co-employee's previous relationship, and she insinuated that this Jane Doe was trailer trash. So she was the full mastermind behind this, and that was the charge before the American Commission. So the ALJ just simply misunderstood or misrepresented the evidence of the American Commission, and I'm sure you're going to hear argument that the Labor Board's decision should be entitled to deference. And that's kind of ironic here, because the ALJ apparently didn't really read the American Commission's decision and did not give any deference to those proceedings. And I did a motion for Leeds to decide additional authority, and I cited this case, Allied Mechanical. And it goes into why you give, it's a Sixth Circuit federal case, and it goes into the reasons, it's National Labor Relations Board versus Allied Mechanical Services, and the full site, I only had the Westlaw site before, it was 734, Fed Third, 486. It goes into the reasons why you give deference to an agency decision, and one of the reasons is expertise. But here, the National Labor Relations Board in that case, or the State Labor Relations Board in this case, has no special expertise in understanding whether the American Commission decision was correct, or whether the American Commission rules were violated. The American Commission has much more expertise in whether the American Commission rules were violated, but the ALJ just threw out two of them and said, those two are not legitimate, and the whole ALJ and Labor Board decision rests on that decision. The ALJ writes, but under the totality of the circumstances, the employer has not shown that he would have taken action for the American Commission, but for those two illegitimate charges in the ALJ's mind. Now, if she hadn't understood the evidence, or properly represented the evidence, we see that all five charges were successful, and all five were supported by the evidence before the American Commission. And Dove was shown to have done what she was charged with, not personally accessing the LEAP database, but having another person, an innocent third party, which she wrote in, access the LEAP database. Not talking to co-workers, but talking to private citizens, hours on end, doing political activities to undermine the candidacy of Sheriff Thompson. Now, we have also set forth in detail that this is protected petitioning activity to bring a petition before the American Commission. Petitioning activity, of course, is afforded First Amendment protection, and the Sheriff has a discretionary role to bring these petitions for discipline. It's important to remember that the Sheriff had, if he wanted to impose any discipline on Deputy Dove, he had to go at this point to the American Commission. He had given two suspensions totaling 30 days, and after 30 days, the only further discipline that could be imposed would be to go to the American Commission. So if something else happened with Deputy Dove, the American Commission was the only avenue for discipline, but it's still a discretionary act to decide to bring charges before the American Commission, and we have heard the reply briefs said, well, Sheriff Thompson's the government, so we don't care about this First Amendment thing, but the case laws are that elected officials still have First Amendment rights, and I really urge the court to look at the- Counselor, isn't there, in the case law of, I think, Marconi and Gurchin, or however you pronounce that case, which is the Illinois State Labor Relations Board, there's a distinction made between even if someone is properly disciplined in front of the American Commission, that some of those underlying facts can give rise to an unfair labor practice, isn't that right? Well, Gurchin says it was decided on the narrow grounds of res judicata. It was not decided under the issue of right to petition. I have some problems with Gurchin, and I'll get into those, but it only addressed a narrow issue of res judicata, and there wasn't privity here of the parties, and the labor board's actions. There was no addressing the right to petition. Here, the- They do make a distinction between, you could be disciplined by the American Commission for misconduct, but that doesn't stop a claim that there was unfair labor practice. But here, the only unfair labor practice Sheriff Thompson is accused of doing is actually bringing a petition. The petitioning action is the unfair labor practice, and that is protected activity. And below, the ALJ didn't necessarily disagree with that. ALJ actually cites DEK construction, but says that, well, no safe harbor here for the Sheriff because his charges weren't reasonably based. But there's been no federal cases that say, well, you have a petitioning right to bring a- that your charges are not reasonably based when you're successful. The case has all been falling down on whether, when you bring unsuccessful charges, were they still reasonably based, so you couldn't bring in unfair labor practice. So if you fail, you still not necessarily have committed unfair labor practice. There's still protection for unsuccessful charges, but they're- That's not what they said. It's what are the motives in filing the charges? The motives in filing the charges? Well, I think, though, you look at DEK construction, and you go to Bill Johnson, and they basically say, when it comes to this petitioning analysis, you don't get into the motives. And I think there, that's where Green got it right, though. We have an intervening cause, the Merit Commission decision, before- so even if there was bad motives, someone else is making the decision. But DEK construction, Bill Johnson, you don't get into the motives here at all. That's a Sixth Circuit case. What case is that? Where's that from? Which- I'm sorry. The last case you cited. Bill Johnson, that's a US Supreme Court case about petitioning rights. So you don't get into the motives when you have a reasonably based charge, just like you have here, that were successful. Bill Johnson was the issue once again. Where were these unsuccessful charges? Another lawsuit, reasonably based. And I really suggest you look at the concurrence of Judge Easterbrook in this Swetlik case. On all four points here, a police chief brings charges before a police commission, and then Easterbrook says, hey, wait a minute. Why are we even talking here? Because those are protected petitioning activities. Even though he is a police chief, even though he's armed with government in one sense, he still has First Amendment rights to bring charges. The BK Construction Company case and the Bill Johnson case, both of those cases were by lawsuits against a union armed employee by a private employer. Yes, but that's why I think the Swetlik is an interesting case there. It's a great issue by Easterbrook, but it's interesting that that is the issue of a police chief bringing charges against a police detective in a case before a police commission. Have you found any case where the majority holding was dealing with that, as Easterbrook suggests? I can't think of any right off. You were citing the Bill Johnson and the BK case for obvious reasons, but they are coming from a different direction. But I did find plenty of cases saying that you don't lose those petitioning or First Amendment rights just because you are an elected official. And when adopting the State Labor Relations Act, we of course looked to the National Labor Relations Act, and the LJ didn't necessarily disagree. She just said, well, it wasn't reasonably based. I'm going to substitute my judgment for the mayor commission, because I think two of these charges are not legitimate charges, even though she was mistaken with facts. There is no case that says the mayor commission's determination is in a res judicata in a labor relations board case as to a claim of unfair labor practice. I'm sorry, I didn't quite understand. Is there any case that holds that if the mayor commission, because there are two separate questions. One is whether there was misconduct by the employee. That's what's in front of the mayor commission. And the other question is whether dealing with the motives and the proceeding filed by the employer, the sheriff. I think that's where Gertrude gets at, to be honest, but I'll tell you what's interesting here. Is here that we have right on the record, if you read the LJ's decision, she is reweighing. The whole decision here is pinned on the decision whether these have merit. She says, under the totality of circumstances, because I've decided two cases don't have merit, that's why I think that the sheriff hasn't rebutted the merit and therefore rebuts, there's no rebuttal of the prima facie case. So it all depends on the reweighing. And in Gertrude, there was not the entry of the mayor commission's proceedings as substantive evidence into the proceedings here. Here, we took the mayor commission's proceedings in total and made them substantive evidence in the proceedings before the labor board. But the ALJ said, I'm going to reweigh merit commission decisions and apparently give no deference to them. Again, going back to my previous question, is there a case that indicates legally that there is an impact of the merit commission against a claim of unfair labor practice? I have not found one directly. Thank you. I have another question for you, Mr. McCoy. And it sort of follows from Justice Carter's question. There was an issue raised about waiver and whether the invocation of the right to arbitrate was a waiver of the right to go before the labor board. Yes. My question has to do with the relief that was granted by the labor board. Is there a waiver of the termination of the decision of the merit commission? I'm sorry, I'm bungling up this question because I'm having a hard time figuring out how to frame it exactly. But did the invocation of arbitration waive any right to have the ALJ rescind the termination? Well, I guess our position is the invocation of arbitration waived the right to have it all before the ALJ, any relief. What's interesting is what the relief sought in both forms, the essential relief, was reinstatement with back pay. And that arbitration is actually still pending. And what do we do with inconsistent results here? And that's the problem with the multiple forms. And I think that was why it would be good to have that waiver clause mean what it says and not have two forms. Because what happens now, if you rule that the labor board's decision stands, do we still do arbitration? I'm sure the union would say, well, we don't need arbitration now. But they've asked for two forms where it says you get one. And it's always a choice by them. It's always a voluntary choice to take arbitration. But they've asked for the same relief as reinstatement and back pay. All right. Thank you. Are there any other questions?  Thank you, Your Honor. Thank you for allowing us the chance to speak to you today. I think the sheriff's attorney, the sheriff and the county, which is also that anomaly may help explain the rationale and how the process works. A simple understanding of that this is the sheriff and the county proceeding as one may help explain some of these issues and goes directly to the First Amendment issues that was raised by the joint employers. The employers are joint under the Act because the county, even though it is the fiscal half of the employer, the one who controls the budget, maybe sets how many deputies there could be at the department, they are the fiscal managers, for lack of a better term, for the joint employers. And the sheriff is the person who has the ability to oversee the deputies from day to day. So there's really not you can't have a full employer without having both the power of the purse and the power of direction there at the same time. So that's why we have joint employers. And it is the sheriff's power to, he has extensive disciplinary power under the law. Of course he has the power to petition his merit commission to discharge a deputy. It is the sheriff's power to take these actions against employees, which is the reason why the sheriff is, there can be nobody else that can, there can be an unfair labor practice against. Because even though the county is a joint employer, the purposes under the Act, the county doesn't take employment actions, really cannot take employment actions, against the deputies on a day to day basis. The entire argument of the sheriff is aimed at a decision that says a sheriff cannot be held liable for an unfair labor practice, period. And that misunderstands, if the sheriff can't be held liable for an unfair labor practice, then there is no such thing as an unfair labor practice under the law, where you're talking about the sheriff and the county being joint employers. I bring that up because there is an attack on Gershon, I don't know if it's Gershon or Gershon, but that decision is in no way, shape, or form anomalous, odd, or unusual. It is the direct result of Section 11C of the Act and the Illinois Supreme Court's decision in the city of Burbank, which the petitioners quote in their brief. First of all, with respect to the issue of remedies, and that was, I believe, essential to this court's analysis in the Gershon decision. We just heard it from counsel before he sat down, and it's on page 7 of their reply brief, where they say time and time again that we are seeking exactly the same remedies in arbitration that we seek. It has demanded the exact same relief in the arbitration form, third line from the bottom on page 7. And that's the claim they keep making, but that's false. And we know it's false because the sheriff is also attacking the imposition of sanctions against them. Well, the arbitrator can't award sanctions. That is a peculiar labor board remedy specified by the legislature in Section 11C of the Act. And those were the sanctions awarded allegedly for making welling. They made a finding for making false responses. Correct, correct. The arbitrator can't do that. The arbitrator can't award 7% interest, which is statutory under 11C of the Labor Act. You can't get to that 7% interest if the labor board can't make the award of back pay, which is specifically authorized to do by the legislature. So in addition to that, as mentioned in Gershon, there are the affirmative remedies of cease and desist. Those remedies are not available at arbitration, and there is no showing anywhere in any of the briefs. And I don't have a copy of the agreements with me, but it's in the appendix. I'm sure. That's not available at arbitration. But reinstatement is. Reinstatement is. That's correct. That's correct. There is some parallel and overlap. There's no doubt about that. But there is a difference between the actions and there's a difference in remedies. That's the first reason why Gershon is not honor and usual. The second reason is the City of Burbank decision, under which the Illinois Supreme Court said that there is a dual motive analysis that the labor board must conduct. Once the union has shown a prima facie case, and there's really no doubt that that existed here because we have direct and circumstantial evidence, I know that the sheriff says you can't consider the direct evidence because it was in a petition, but that's ridiculous. It's sort of the same thing as saying, for example, if I were sheriff and I wanted to terminate somebody for a protected class reason and I put it in a petition, well then I can't be sued under Section 1983 because even though I may have said I took the action against somebody because they're male, and based my reasoning on a gender classification, it's in a petition. And because it's in a petition, I have the First Amendment right there for it.  That's ridiculous. And the other reason why it's ridiculous is the Haley decision, which hopefully I can get to before I'm done. But anyway, in the City of Burbank, there's a dual motive analysis. And the Supreme Court requires the board to consider whether or not the reasons for discharge were legitimate. The labor board doesn't have the option to not consider whether or not the charges were legitimate. Thank you. I don't know if it's half or 30%, but a majority of their brief is directed at this idea that the sheriff's or the mayor commission's decision cannot be challenged. But that is exactly what the Supreme Court said the labor board is supposed to do under City of Burbank. They're supposed to consider whether or not those were legitimate. And that's the other reason why Gurchon is not odd or unusual, but makes perfect sense. I want to close with the First Amendment issue. We took the position that the government never has First Amendment rights. That's incorrect. The petitioner cited, the sheriff has cited Haley's decision. It's 832 F. Supp. 2nd. 612. It's at their head note 24. And the rule of law is entirely consistent with Section 10C of the Act. As long as there are no threats or promises made in someone like the sheriff's speech, it's protected. But we have threats. He has the ability to discipline the people. That is not protected. That has always been the law and is the law under Section 10C of the Act. On the point you're talking about Gurchon, your opponent is arguing that here the Merit Commission found there were grounds, and then all of a sudden you get this contrary decision after the Merit Commission. Now, I take it your argument is that Gurchon says that you can look at this and the board has to look at this. Right. Correct. Okay. Which causes, seems to me, like an anomaly. You can have the Merit Commission doing one thing and the board doing another thing. Correct. And your position is that's what the law says can happen because the board's required to do certain things and they do it their way and the Merit Commission does it their way. Correct. That's Supreme Court case law and also the statutory scheme that was enacted by the legislature. So there's no, like, estoppel impact or res judicata impact or collateral estoppel impact? From one agency to the next, no, and I think Gurchon says exactly that. Thank you. Thank you, Mr. Hoyles. Mr. Alex? Good morning, Your Honors. May it please the Court. I'm Illinois Assistant Attorney General Carl Ulitz for the State Labor Board. Good morning. Your Honors, unless the Court wants to go to a specific place, I just want to move through this as sort of my brief does. There's an argument that she's not a certified employee or she's not a public employee under the Act, but she is certified. She was certified long before this dispute arose. Unlike the federal law, under Illinois state law, employees are certified or not certified as public employees. So Officer Dove was certified. The suggestion that she's not someone eligible to be certified was a version that should have been carried by the sheriff and he didn't bring anything up. Now, I did say in my brief that it wasn't accepted. It was accepted. He points out to where in his exceptions late in the argument he does say this, but that argument, although raised, is meritless. Also, the suggestion that a deputy sheriff, the lowest ranking officer in the sheriff's office, would be a managerial employee is frivolous. There's a test for managerial employees. There's no suggestion that any of the elements of the test are met. The suggestion that she's a manager by law is also frivolous, and I'll stand on my brief for the rest of that argument. With regard to whether statutory rights were waived, section 16 of the collective bargaining agreement, I've included it in my brief. I think it needs to be read in context, and that's the problem with how the sheriff is reading it. He's reading it, but it says that there shall be no remedies other than what's here, but if you read what section that's in, that's in the contractual dispute section of the collective bargaining agreement. So when the parties agree that there's not going to be any further remedies other than arbitration, what they're saying is that if there's a contract dispute other than the ones we're fighting about, they'll be waived. Labor law is very clear that when an employee is asked to waive statutory rights, there has to be, to sort of just summarize it, a red flag, a warning, you're about to waive statutory rights, and this agreement doesn't meet that requirement. So the board was certainly reasonable in deciding that there was no waiver. With regard to whether ratio-economic collateral stop will apply between the two state agencies, one of the points I think is very important to make here, because my opponent misrepresents it over and over, he keeps saying the Merritt Commission decision was final or successful. It wasn't. It's still on review, and agency decisions that are on review do not bar other decisions, even if they reach different results. So the suggestion that collateral stop will or ratio-economic collateral apply here is wrong for the simple reason that the Merritt Commission decision lives on. It's still pending below. If it were final, Gershon says that that's okay, even though they would seem to reach different results. Now, I think there's been a misreading of the board's decision here. The ALJ and the board have not said that there isn't misconduct here. The ALJ and the board are saying that the sheriff has the obligation of showing that he would have taken the same actions because there's been a prima facie case that he's been harboring anti-union animus. In trying to show he would have taken the same actions, we point to the five charges, and on two of those charges, he sort of can't defend his decision to bring the charges. The political activity charge is very old. It predates a lot of the misconduct here, and yet it wasn't brought at the time that she was apparently doing this conduct. It was earlier in 2010, and these charges were brought at the end of 2010. With regard to the other charge, the Leeds database charge, there's no suggestion that there wasn't something that was done wrong by Officer Dove with regard to Leeds. It's that the sheriff turned a blind eye to his own investigators. There was apparently footage available of the bulletin board where the person who took the Leeds photograph posted it. The sheriff didn't go look, didn't go see, didn't discipline the other employee. It looks like there's a double standard here with regard to those employees who are exercising union rights. And to back the court up a little bit, don't forget, this was a situation where Officer Dove was told that if she was going to bring grievances, she was going to face criminal charges. So that shifted everything. At that point, it becomes the sheriff's burden to say, oh, what I did was in good faith. And all that the ALJ found was is that at least with regard to two of the counts, there wasn't a showing of good faith sufficient to show that the charges would have been filed anyway. That is why there was a finding of an unfair labor practice, and that is why Officer Dove was reinstated. With regard to the sheriff's First Amendment rights. I have First Amendment rights. Your Honor has First Amendment rights. We all have First Amendment rights. I can't petition the Merritt Commission to fire an officer in the County Bureau because they're not First Amendment rights. That action is a statutory right. That's the right that the sheriff is exercising when he makes that petition. The cases he's citing typically are cases where people are filing lawsuits. I have the right to file a lawsuit, too. We all do. And so maybe there is a privilege in filing a lawsuit when you're faced with an anti-union animus charge. You say, I have a right to file a lawsuit, and that's correct. But with regard to petitioning the government, with regard to the sheriff's right to petition the Merritt Commission, it's my contention that that's not a First Amendment right. I realize that Judge Easterbrook seems to have suggested otherwise in a concurrence in the Seventh Circuit that my opponent has cited. I don't think Judge Easterbrook quite understands, at least not Illinois law. Maybe in Wisconsin someone could petition the Merritt Commission and say this officer should be fired. Maybe that is speech or a petitioning right under the First Amendment. But in Illinois, it's a statutory right. And we know that when statutes bump up against each other, that can cause a problem for a court. But the Labor Act says specifically that its provisions, to the extent that there's any conflicts, trump the other statutory rights. I think I've covered my points except for the sanctions. I think the sanctions issue is the simplest issue. The board has discretion. In this case, the sheriff made representations to the board in answering the complaint that were shown to be totally false. He said he didn't know that the officer had grieved, and yet one of his deputies testified that she had been told what to do about the fact that there was a grievance pending. He also testified he didn't know that she was seeking to certify a new union. I'm sorry, he answered the complaint saying he didn't know that. And then when he testified, suddenly he admits he knew this, and the under-deputies knew it. So the decision to award sanctions, and they were not giant sanctions. I think Mr. Boyle was given his fees for having to answer those allegations. So unless there are any other questions, we'd ask the court to affirm the labor court's decision. Thank you. Thank you, Mr. Eulitz. Mr. McCoy, rebuttal? The Gurchin decision was decided narrowly on res judicata, and I think that's one thing we can distinguish here. We do have a collateral estoppel argument as to the validity of the Merit Commission's decisions, and the Attorney General's Office has argued that collateral estoppel doesn't apply because we don't have the final decision of the Merit Commission. That is not true. The Merit Commission decision was not taken administrative review from that decision within 30 days of the final decision. They say, well, we have arbitration. But arbitration is not a review of the record. Arbitrator does not review the record, as this court does reviews here on a petition for administrative review here. It is a separate de novo proceeding, and that has been the position of the union before. We're just not doing a review of what the Merit Commission did. We're going to have a new proceeding here. They don't want just a review of the record because the union walked out of the Merit Commission hearing and decided not to present evidence, but they want a different proceeding. So it's not a review. So it is a final decision on the merits, and then we have collateral estoppel. And as much as the ALJ wants to walk away from it, the decision of the Attorney General wants to walk away from it, the decision of the ALJ was that the sheriff could not rebut that he would have taken these actions but for the misconduct of Dove because the ALJ made specific findings that were wrong, that Dove talked to coworkers, not to private citizens, totally ignored that Dove was talking for an hour during work time in uniform, looking to undermine the sheriff, saying I'm not going to write tickets, going to the sheriff's opponent, saying you need, or Teddo is your running mate, you need this help if you want to win, all in uniform. The ALJ, we've got to create an interpretation of what the ALJ said, but the ALJ said no. The sheriff had illegitimate charges about the Leeds matter because Dove didn't do it personally. Well, she was charged with instigating the mastermind. It's not a double standard to treat the mastermind behind an illegal action differently than other employees. I'm going to go briefly on the waiver. It says waive recourse of any other crime. It's very clear. You don't have to put exclusive in the waiver for it to be operative. You don't even have to use the word waiver. The case cited by the union, which I appreciate them finding, it was the American Federation of State, County, and Municipal Employees versus the State Labor Relations Board, 274, 327, which found a waiver of the right to bargain over reductions in force under the management clause, even though that that section had no use of the word waiver and no use of the word exclusive. There may be some consequences going between arbitration and before the labor board when seeking a remittance. But what's different than most typical waiver cases is a typical case is the person signs the contract. It has an exclusive arbitration clause, and then you're bound by it. And you've made the choice ahead of time. Here, it is always voluntary by the union. Afterwards, once American Commission has imposed discipline, the union can elect arbitration. But once you elect arbitration, you've waived any other recourse. So the argument is like this. Mother says to the child, you can have cake, but by taking cake, you waive any other resort of any other kind. Kid takes cake and pie and says, you didn't say pie. Now, it was very clear. It's a little bit different, isn't it? It is different. You know why it's different? Because here, the child is not having something. Here, the union is not having something imposed on it. Here, the union voluntarily signed an agreement saying, I agree to these terms, that I'm going to agree to only have one forum. I'm not going to have multiple forums. I'm not going to put you to expense for the craziness of inconsistent results. If I choose arbitration, I do so voluntarily, knowing the fact, circumstances of that particular case, because it's an act of the fact. After the American Commission makes a decision, then I choose arbitration. And then I decided to be bound by it. And I said ahead of time, I'm going to be bound. If I take arbitration, I'm not going to have any other remedies. Any other questions? Thank you, Mr. McCoy. Thank you. We thank all three of you for your arguments this morning. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.